**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| MALIBU MEDIA, LLC<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned to IP Address 98.228.213.184,<br><br>Defendant. | Case No. 1:13-cv-08484<br><br>The Hon. Sara L. Ellis |

**REPLY MEMORANUDM IN SUPPORT OF:**
**MOTION TO VACATE COURT'S ORDER GRANTING EARLY DISCOVERY (ECF DOC. 9), TO QUASH SUBPOENA, TO PROCEED ANONYMOUSLY, AND TO ORDER MALIBU TO SHOW CAUSE WHY IT AND ITS COUNSEL SHOULD NOT BE SANCTIONED**

## I. Introduction

Malibu Media, LLC ("Malibu") has failed to address the issue brought before the Court. Malibu came before this Court, *ex parte*, and asked for relief with a selective recitation of facts, failing to allow this Court to make a fully informed decision and escaping the safeguards created by our adversarial system. Accordingly, the Order allowing early discovery should be vacated, and it follows, that the subpoena should be quashed. In an attempt to re-frame this original, concise, issue, Malibu attempts to argue whether or not IPP testimony is admissible, which is not before the Court. Malibu's attempt at misdirection should not skew the Court's attention away from the fact that it did not have all the facts at its disposal when it granted early discovery. The Motion should be granted.

## II. Argument

### A. *Ex Parte* proceedings require the utmost forthrightness with the Court to protect the integrity of the justice system

The crux of Doe's motion centers on the fact that Malibu obtained the extraordinary relief of early discovery in an *ex parte* proceeding, and failed to present this Court the full set of facts to fully advise it. The need for *ex parte* proceedings[1] does not excuse Malibu from placing all facts before the Court in its *ex parte* proceeding for this Court's for full analysis and consideration.

*Ex parte* proceedings are in derogation of safeguards, evolved over decades, that the Rules of Civil Procedure are meant to protect against. The Rules contemplate the use of regular noticed motions for a just result – relying upon opposition to flesh out arguments and positions, thus fully advising the Court. *Mission Power Eng'g Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 491 (C.D. Cal. 1995), *see also,* Ame. Bar Ass'n Model R. Prof. Conduct 3.3, cmt 14 (explaining how *ex parte* proceedings avoid the safeguards of adversarial proceedings and require forthrightness from moving parties). Thus, when there is no adversarial proceeding, it is all the more important for Malibu to ensure the Court is fully advised. At a minimum, Malibu should have fully apprised this Court of the facts as placed in the Doe's Brief in support of his Motion, to wit:

- Feiser's declaration attached to the motion for early discovery states that he "monitor[s] the BitTorrent file distribution network," an apparent misstatement of fact which fails to square with his testimony as provided at the bellwether trial. *Decl. of Feiser,* ECF Doc. 6-4; *Test. of Feiser*, ECF Doc. 18-3 ("I've got three primary functions. . . . to verify the downloaded movies . . . to send infringement data to the law firms. . . and . . . to check the declarations.");
- Mr. Patzer, whose declaration was not provided in support of the *ex parte* motion for early discovery, actually has the information that Feiser declared was his personal knowledge. (ECF Doc. 18-9, pp. 4, 24);
- IPP's name has been continually hidden from the Courts, and Defendants, obstructing investigation into its activities, including whether or not it is the successor in interest, or alter-ego, of a company, Guardaley, found to be running honey pot schemes;
- Malibu failed to inform this Court of whether it had a *prima facia* case of copyright infringement, despite ability to do so;
- Malibu's investigator, IPP is not a licensed private detective in this state;
- Malibu's investigator, IPP, was being compensated pursuant to contingency-agreement, providing more than sufficient reason for bias.

---

[1] In fairness, Doe is unaware of another manner for Malibu to determine the identity of supposed infringers.

For these reasons, this Court's Order allowing early discovery should be vacated. If vacated, the subpoena issued should be quashed.

### B. Malibu failed to fully inform this Court of the veracity of its investigations

Just like the Wizard of Oz, Malibu urges this Court to "[p]ay no attention to that man behind the curtain." That is, do not look into the sole source of connection between Doe's IP address and the alleged infringement, IPP's software. Yet, in its Response to Doe's Motion, it spends seven pages explaining why IPP's system should be believed. Rather than addressing its failure to fully inform the Court of all material facts, Malibu simply explains that it believes, incorrectly, that IPPs investigations are flawless. No system is flawless.

Malibu wholly relies on software and servers to identify defendants for these cases. All phases of software development, installation and implementation require human skill and interaction. It is axiomatic that humans make mistakes. It is therefore not a logic-defying leap to assume that humans make mistakes in developing, installing and implementing software. Further complicating the issue are the human outputs on each end, which work for companies, at the time, being paid on a contingency fee basis.

The software developed by Mr. Patzer, and residing on IPP servers, has not been verified, or able to be challenged, by any adversary in any proceeding. Further, other BitTorrent plaintiff's have admitted to error up to thirty percent of the time. *In re BitTorrent Adult Film Copyright Infringement Cases*, Nos. 11-3995(DRH)(GRB), 12-1147(JS)(GRB), 12-1150(LDW)(GRB), 12-1154(ADS)(GRB), 2012 WL 1570765, at *3 (E.D.N.Y. May 1, 2012) (stating plaintiff estimated that 30% of the names turned over are innocent).

### C. During its *ex parte* proceedings, Malibu could have informed the Court of whether or not a *prima facia* case of infringement existed, but chose not to

On the face of the Complaint, and on the face of its memorandum in opposition to Doe's motion**,** Malibu fails to address the fact that it did not inform the Court it failed plead a *prima facia* case of copyright infringement, <u>although it could have</u>. Indeed, IPP allegedly only downloaded a few pieces of a film from Doe's IP address. As explained by Malibu, IPP had to use "pieces it received from others in the swarm to create a complete and viewable copy" of any given film. (ECF Doc. 18, p. 15).

In order to plead a *prima facia* case of copyright infringement, Malibu had to plead that Doe had created copies of the works. *Peters v. West,* 692 F.3d 629, 632 *(7th Cir. 2012), citing, Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991).* Malibu did not plead that Doe created a copy of a work, just that someone using his IP address had a few encrypted, unusable, small pieces of data. However, Malibu <u>could have informed</u> the Court how much of the films were allegedly downloaded.[2] This is because the BitTorrent protocol was designed to provide just such information to individuals, including IPP. Malibu should have informed the Court of this fact.

It must go uncontroverted that all BitTorrent connections start with an initial handshake, as the creators of the protocol state as much. See attached Exhibit A.[3] This introductory handshake between computers is followed by "alternating stream of length prefixes and messages." *Id.* It should likewise go uncontroverted that one of these "peer messages" is the "bitfield" message, which is only sent as the first message. *Id.* This message contains a "bitfield with each index that downloader has sent." That is, this particular message, which would have been one of the first received by IPP, contains exactly how much of the film that Doe allegedly already downloaded

---

[2] Malibu cites to an Eastern District of Wisconsin case wherein a motion to quash was <u>not</u> premised on whether or not Malibu was able to indicate if the alleged films were downloaded. *Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 156323, 5 (E.D. Wis. Oct. 31, 2013).
[3] Cohen, B., *The BitTorrent Protocol Specification*, ver. becdd9a11e68ace72751306b3d59146ed648e6fe (Jan. 10, 2008).

(and thus was able to upload to others). Accordingly, IPP knew how much of the films that someone using Doe's IP address allegedly downloaded. Further, IPP could have attempted to download the entirety of the film from any individual IP address, thus also confirming that the entirety of the film was downloaded. Malibu had the opportunity to inform this Court of how much of a film was downloaded, and how likely there was actual copying of a film, but it chose not to.[4] Why it chose not to share the information with the Court in the *ex parte* proceeding is unknown to Doe, but troubling.

Thus, as demonstrated above, Malibu was fully able to provide this Court with sufficient information as to whether or not it had a *prima facia* case, it simply chose not to bring the same to the Court's attention in an *ex parte* proceeding, and wanted this Court to assume a complete download, in spite of the ability to fully explain the situation.

### D. Doe is not arguing whether or not IPP testimony is admissible, just whether or not it should be relied upon in an *ex parte* proceeding

In an attempt to re-frame the fundamental issue brought by the motion to vacate and quash, Malibu attempts to argue whether or not IPP testimony is admissible. This is not the issue framed by Doe's motion, and it is not before the Court. Doe's brief repeatedly stated, that the issue before the Court is whether or not such incomplete information and bought declarations should have been relied upon in an *ex parte* proceeding.[5]

The only connection between Doe's IP address and the alleged infringement was the declaration of Tobias Feiser. Accordingly, the issue is whether or not the Court was fully advised as to the facts surrounding that declaration. As demonstrated and listed above, as well as in Doe's

---

[4] IPP allegedly creates full PCAPs for <u>all</u> network traffic on its servers, thus, it has the information. ECF Doc. 18-9, pp. 18-19.
[5] *See, e.g.* "To rely upon such a bought declaration . . . in an *ex parte* proceeding is manifestly unjust." (ECF Doc. 13, p. 7). "Feiser's declaration . . . should not be relied upon in an *ex parte* proceeding." *Id.* at 8. "This information should have never been relied upon to allow for early discovery." *Id.* at 9.

original brief, the Court was not fully advised of the factual situation surrounding that brief, including its misstatements, and importantly, its omissions.

## III. Conclusion

For the foregoing reasons, the relief sought in the Motion to Vacate Courts Order Granting Early Discovery (ECF Doc. 9), To Quash Subpoena, To Proceed Anonymously, and to Order Malibu to Show Cause Why It and Its Counsel Should Not Be Sanctioned should be granted.

Respectfully submitted,

/s/Jonathan LA Philips
Jonathan LA Phillips
One of Doe's Attorneys
456 Fulton St.
Ste. 255
Peoria, IL 61602
309.494.6155
jphillips@skplawyers.com
ARDC No. 6302752

**Certificate of Service**

I certify that March 3, 2014 a copy of the foregoing has been filed with the Clerk of the Court via the Court's ECF filing system, thereby serving it upon all counsel of record.

/s/ Jonathan LA Phillips